# THE UNION BANK OF LOUISIANA *v.* SMITH.

Where, subsequently to the seizure under a *fi. fa.* and advertizement of the property for sale at the court house of the parish, the court house is removed, under the provisions of a special law, to another place, the advertizement which had been posted up at the old court house should be removed to the new, and the sale be made at the latter. C. P. 664. Stat. 5 March, 1842. After the new seat of justice was selected, and a court house provided there, it became the only place at which sales under execution could be legally made.

Where a defendant in injunction prays for its dissolution, and that the principal and C. M., his surety, be condemned, *in solido*, to pay interest and damages, and it appears from the bond that J. J., and not C. M., was surety on it, judgment may be rendered against the party really bound as surety. Under sec. 3 of the stat. of 25 March, 1831, it was sufficient to show who was the real surety on the bond, to authorise a judgment against him.

APPEAL from the District Court of Pointe Coupée, *Farrar*, J. *Cooley*, for the plaintiffs. *Hudson*, for the appellant. The judgment of the court was pronounced by

KING, J*. The Union Bank issued a *fieri facias* upon a judgment obtained against the defendant, *Smith*, in virtue of which the sheriff seized two slaves of the latter, and advertized them on the 5th of July, for sale at the court house

---

*EUSTIS, C. J., did not sit, being interested.

UNION BANK
*v.*
SMITH.

of the parish of Pointe Coupée, on the 7th of August, 1847.  The defendant instituted this action to enjoin the execution of the writ, on the ground that the sheriff, without authority of law, was about to sell the slaves seized at a place different from that named in the original advertizement.  The injunction was dissolved, and the defendant, *Smith*, and his surety, were condemned, *in solido*, to pay three per cent interest, and twenty per cent damages, on the amount of the judgment enjoined.  From that judgment the present appeal has been taken.

It appears from the evidence that, at the date of the seizure and of the advertizements by the sheriff, the court house of the parish of Pointe Coupée was at a point upon the Mississippi river nearly opposite to the town of Bayou Sara.  The legislature, by an act passed on the 7th of April, 1847, p. 79, authorised the inhabitants of the parish of Pointe Coupée to establish a seat of justice for the parish, and directed an election to be held for that purpose. Under the authority of that law a site was chosen on False river, some distance from the old court house, and on the 14th of July, the sheriff made proclamation of the fact as directed by the statute.  The police jury was convoked, and at its meeting selected a house within the limits prescribed by the vote of the inhabitants, which was rented and established as the court house of the parish. Upon this change being made the sheriff gave public notice, that all sales which had been advertized for the first saturday of August, would be made on that day at the new seat of justice; and the advertizement of the sale now in question, which had previously been posted up at the court house on the Mississippi river, was removed and posted up at the newly established court house.  The defendant, *Smith*, contends that the sale could only legally have been made at the court house on the Mississippi river, which was the seat of justice at the date of the seizure; that the change of the place of sale by the sheriff was unauthorised by law; and that the advertizements of thirty days required by law are intended to be thirty consecutive days notice at one place.

The sheriff is required by law to advertize under execution at the court house of the parish, and to sell the property seized at the court house, unless the debtor claim the right of having his plantation or slaves sold at his domicil. C. P. art. 664.  Acts of 1842, p. 210.  The advertizement of the sheriff in the present instance announced that the sale would be made *at the court house of the parish of Pointe Coupée*, without designating the spot at which the court house stood.  When the new seat of justice was selected, and a court house was provided at that point, that became the only place at which he could legally proceed to make sales under execution.  The old court house then ceased to be a public place known to the law, or the place at which the sheriff could legally advertize or sell without the consent of all the parties.  The police jury had not only the authority to provide a court house at the place selected for the seat of justice, but it was their duty to do so, both under the general law and the special law providing for the removal.  Bul. and Curry's Dig. p. 164, §10.

It became indispensable to the validity of the sale under this authorised change, that the advertizement should follow the court house to its new site. The sheriff, by removing the advertizement, gave to it the thirty days publicity required by law, and under circumstances rather calculated to increase than to diminish the notoriety of the sale.

The *Union Bank*, in its answer, prayed for a dissolution of the injunction, and that *Smith*, and his surety, *Charles Morgan, senr.*, should be condemned, *in*

*solido*, to pay interest and damages.  *Joseph Jewell* was the surety on the bond, and not *Morgan*; the court, however, rendered a judgment against *Jewell* as surety; and as to him it is urged that the judgment is erroneous, and must necessarily be reversed.  We think that the judge did not err.  The act of 1831 provides that the surety on the injunction bond *shall be considered a party plaintiff in the suit*; and, in case the injunction shall be dissolved, the court, in the same judgment, shall condemn the plaintiff and surety, jointly and severally, to pay to the defendant interest, &c.  Under this act it was sufficient to show who was really the surety on the bond, to authorise a judgment, *in solido*, against him.  He was by law a party plaintiff on the record; and the misnomer as to him in the answer was cured by the exhibition of the bond, which disclosed his true name and character.

*Judgment affirmed.*